RUTH L. HARRIS, as Ex'r of the Estate of Bernice Harris, Plaintiff-Appellant, v. THE DEPARTMENT OF HUMAN SERVICES *et al.*, Defendants-Appellees.

Second District    No. 2—03—0011

Opinion filed January 30, 2004.

Steven C. Perlis, of Family Center for Elder Law, P.C., of Arlington Heights, for appellant.

Lisa Madigan, Attorney General, of Chicago (Gary S. Feinerman, Solicitor General, and Carl J. Elitz, Assistant Attorney General, of counsel), for appellees.

JUSTICE McLAREN delivered the opinion of the court:

Plaintiff, Ruth Harris, appeals from the trial court's order affirming the order of defendants, the Department of Human Services (DHS) and the Department of Public Aid (DPA) (collectively, "the State agencies"). We affirm.

We first note that Ruth Harris, Bernice's daughter, had Bernice's power of attorney and initiated these proceedings. We also note that Bernice died during the pendency of the proceedings, which were continued by Ruth as executor of Bernice's estate.

Bernice Harris, a nursing home resident, applied for Medicaid assistance under the Medical Assistance—No Grant (MANG) program. Bernice's husband, David, was not a nursing home resident; therefore, Bernice sought to transfer assets to David pursuant to section 120.379(d) of the Illinois Administrative Code (89 Ill. Adm. Code § 120.379(d) (1998)). Under that section, a nursing home resident may transfer to his or her "community spouse" (a spouse not residing in a nursing home) assets that need not be spent on the resident's medical

care. The amount of assets that may be transferred is known as the "Community Spouse Asset Allowance" (CSAA). See 89 Ill. Adm. Code § 120.379(d) (1998). At the time of Bernice's application, the CSAA maximum was $89,280. However, Bernice sought to increase the amount of assets to be transferred by $25,000. After an administrative hearing, the State agencies denied the request. The trial court affirmed the order. This appeal followed.

■ Ruth contends that the State agencies erred in determining that David was not entitled to an increased CSAA. When reviewing the appeal of an administrative decision, this court reviews the agency's decision, not the decision of the trial court. *Metropolitan Airport Authority v. Property Tax Appeal Board*, 307 Ill. App. 3d 52, 55 (1999). When reviewing purely factual findings, this court will deem the agency's findings and conclusions to be *prima facie* true and correct, and they will be reversed only if they are against the manifest weight of the evidence. *Carpetland U.S.A., Inc. v. Illinois Department of Employment Security*, 201 Ill. 2d 351, 369 (2002). If the decision involves a pure question of law, our review is *de novo*. *Carpetland U.S.A.*, 201 Ill. 2d at 369. Mixed questions of law and fact are to be reviewed under the "clearly erroneous" standard and will be reversed only if, after a review of the entire record, this court is left with the firm and definite conviction that a mistake has been committed. *Carpetland U.S.A.*, 201 Ill. 2d at 369.

The hearing officer found the following uncontested facts. As of December 3, 2001, Bernice had nonexempt assets in her name or held jointly with David in the amount of $123,404.62, and David held nonexempt assets in the amount of $7,403. David's monthly income, for purposes of the request for an increased CSAA, totaled $1,185, and consisted of $1,035 from Social Security and $150 from a pension.

Also uncontested are the applicable statutory figures. At the time of the application, the CSAA was not to exceed $89,280 unless more was needed to raise the community spouse's income to the maximum amount permitted as the "Community Spouse Maintenance Needs Allowance" (CSMNA). See 89 Ill. Adm. Code § 120.379(d)(2) (1998). The CSMNA is a minimum level of monthly income allowed to the community spouse. See 89 Ill. Adm. Code § 120.379(f) (1998). At the time of the application, the CSMNA was $2,232.

In this case, the State agencies found that Bernice could transfer $81,877 to David (the $89,280 CSAA minus David's nonexempt assets of $7,403). This left, after certain other minor adjustments, $39,634 in excess nonexempt assets that Bernice was required to spend on her own health care. Bernice requested that she be allowed to transfer a total of $114,280 ($81,877 plus $7,403 and an additional $25,000) in

order to raise David's income closer to the CSMNA. This additional transfer would come out of her spend-down amount of $39,634.

■ Section 1396r—5(e)(2)(C) of the Medicare Catastrophic Coverage Act (MCCA) provides:

"If either such spouse establishes that the community spouse resource allowance [the federal appellation for the CSAA] (in relation to the amount of income generated by such an allowance) is inadequate to raise the community spouse's income to the minimum monthly maintenance needs allowance, there shall be substituted, for the community spouse resource allowance under subsection (f)(2) of this section, an amount adequate to provide such a minimum monthly maintenance needs allowance." 42 U.S.C. § 1396r—5(e)(2)(C) (2000).

The MCCA does not specify how the income generated by the CSMNA is to be determined. Such a calculation is left to the states as they administer the Medicaid program. The DPA has determined that it will:

"[M]easure the amount of an allowable increase in the CSAA by the cost to purchase an actuarially sound single premium life annuity producing monthly payments that, when added to the community spouse's income, will be sufficient to raise the community spouse's income to, but not more than, the [CSMNA]. *If assets are insufficient to purchase such an annuity, the Department will measure the amount of an allowable increase in the CSAA by the cost to purchase an actuarially sound single premium life annuity producing monthly payments using available assets.*" (Emphasis added.) 89 Ill. Adm. Code § 120.379(d)(2)(A) (1998).

It is the appellant's duty to provide DPA with the estimated cost to purchase the annuity. 89 Ill. Adm. Code § 120.379(d)(2)(B) (1998). Although the calculation of income after the approval of an increased CSAA will include the amount of the annuity payment, the spouse is not required to actually purchase the annuity. 89 Ill. Adm. Code § 120.379(d)(2)(D) (1998).

■ ■ Ruth argues that both the CSAA asset allowance and the CSMNA income are minimum entitlements such that "neither should be sacrificed so that the other minimum amount can be achieved." Thus, it is the institutionalized spouse's assets, not those of the community spouse, that are to be used to purchase the annuity. We disagree. Section 1396r—5(e)(2)(C) of the MCCA clearly provides that it is "the amount of income generated by" the CSAA (*i.e.*, the income generated by the assets) that is to raise the community spouse's income to the "minimum monthly maintenance needs allowance," or CSMNA; only if the CSAA is insufficient to raise the community spouse's income to the minimum level will another amount beyond

the established CSAA be substituted. See 42 U.S.C. § 1396r—5(e)(2)(c) (1998). In construing a statute, a court is not at liberty to depart from its plain language and meaning by reading into the statute exceptions, limitations, or conditions that conflict with the intent of the legislature. *Inphoto Surveillance, Inc. v. Crowe, Chizek & Co., LLP*, 338 Ill. App. 3d 929, 933 (2003). If the language of the statute is plain, clear, and unambiguous, the intent of the legislature is to be ascertained therefrom. *Inphoto Surveillance, Inc.*, 338 Ill. App. 3d at 933. Only a tortured reading of section 1396r—5(e)(2)(C) of the MCCA could lead to Ruth's interpretation of that section. Therefore, we conclude that the State agencies did not err in denying an increase in the CSAA.

■ Section 120.379(d)(2) of the Administrative Code requires evidence of the cost of a single premium life annuity that produces payments that would raise the community spouse's income to the CSMNA. In this case, that would be evidence of the cost of an annuity that would provide monthly income of $1,047 (the CSMNA of $2,232 minus David's income of $1,185). Ruth presented evidence of a $25,000 annuity that would produce income of $460.42. As the cost of this annuity was less than the CSAA, there were sufficient assets in the CSAA to purchase the annuity, and no increase in the CSAA was warranted. See 89 Ill. Adm. Code § 120.379(d)(2) (1998).

It is evident that Ruth presented evidence of the income production of an annuity purchased with the $25,000 increase that she sought. While this evidence may have been presented because Ruth misread the applicable statute, it was not the evidence required to demonstrate a need for an increased CSAA. Ruth should have presented evidence of the income generated by the CSAA and whether that income, added to David's income of $1,185, provided David with the CSMNA of $2,232. The burden of providing proper evidence proving the insufficiency of the CSAA was on Ruth. The State agencies can make a decision based only on the evidence presented. Based on the evidence presented in this case, Ruth failed to demonstrate that an amount over and above the CSAA was necessary to provide David with the minimum income. Therefore, we find no error in the State agencies' denial of an increase in the CSAA.

For these reasons, the judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

O'MALLEY, P.J., and BYRNE, J., concur.