822 N.E.2d 882 (2004)
345 Ill. App.3d 497
291 Ill.Dec. 7
Martha GILLMORE, Executrix of the Estate of Mary A. Fillbright, Deceased, Plaintiff-Appellant,
v.
The ILLINOIS DEPARTMENT OF HUMAN SERVICES, Acting Through Linda Renee Baker, Its Secretary, and Jackie Garner, Director, Illinois Department of Public Aid, Defendant-Appellee.
No. 4-04-0048.
Appellate Court of Illinois, Fourth District.
Argued November 17, 2004.
Decided December 10, 2004.
As Modified Upon Denial of Rehearing January 19, 2005.
*884 Duane D. Young (argued), Dawn D. Behnke, LaBarre, Young & Behnke, Springfield, for Martha Gillmore.
Lisa Madigan, Attorney General, Gary S. Feinerman, Solicitor General, Timothy K. McPike, Assistant Attorney General (argued), Chicago, for Department of Human Services.

MODIFIED UPON DENIAL OF REHEARING
Justice APPLETON delivered the opinion of the court:
Plaintiff, Martha Gillmore, as the executrix of Mary A. Fillbright's estate, appeals from the circuit court's order affirming the administrative decision of the Illinois Department of Human Services (Department). The Department awarded Fillbright medical assistance beginning January 1, 2002. However, the award was subject to a penalty period from April 2002 through January 2004 because Fillbright's purchase of an annuity on January 31, 2002, was considered a nonallowable transfer of assets. Plaintiff appealed to the circuit court, arguing the Department erred in implementing the penalty because the purchase of the annuity conformed to federal law. We affirm.

I. BACKGROUND
On January 31, 2002, Fillbright, age 78, applied for medical assistance under the Medical Assistance  No Grant (MANG) program administered by the Department. Fillbright was seeking financial assistance for her residential long-term care. The same day she applied for MANG, Fillbright purchased a single-premium annuity in the amount of $73,713. The annuity was based on her life expectancy of 116 months with payments to Fillbright for 115 months in the amount of $188.94 and a final payment in month 116 of $72,741.94. Fillbright's life expectancy was derived from federally approved life-expectancy tables.
On March 11, 2002, the Department's local office determined that Fillbright's purchase of the annuity constituted a nonallowable transfer of assets subject to an ineligibility period. Her benefits, which had been approved effective January 1, 2002, were subject to a penalty where no benefits would be paid between April 2002 and January 2004.
Fillbright appealed the office's decision. On June 25, 2002, the Department conducted an administrative hearing before a hearing officer. On July 28, 2002, the Department, through its secretary, Linda Renee Baker, considered and adopted the hearing officer's findings of fact and affirmed the office's decision. In evaluating Fillbright's appeal, the Department questioned whether Fillbright received fair-market value on her purchase of the annuity. The Department determined that she did not receive fair-market value since she was not being paid in "approximately equal periodic payments" over the term of the annuity in accordance with section 120.387(e)(13) of Title 89 of the Illinois Administrative Code (89 Ill. Adm.Code § 120.387(e)(13) (Conway Greene CD-ROM March 2002)).
The Department held as follows:
"In this case, the annuity clearly does not pay benefits in approximately equal periodic payments over the term of the annuity, and the local office correctly determined that, accordingly, fair[-]market value was not received. The local office correctly determined a 22[-]month *885 penalty period for [long-term care] services, from April 2002 through January 2004, based on the amount of the transfer and the private rate for [long-term care] services at the facility where [Fillbright] resides."
On August 22, 2002, Fillbright filed a complaint for administrative review with the circuit court of Menard County, claiming the Department's decision was in error and contrary to federal law. Fillbright claimed the Department's decision violated her state and federal constitutional rights to due process and equal protection. On September 15, 2003, the circuit court affirmed the Department's decision to impose the penalty period. In its order, the court held:
"Once the Department determined the annuity in this case was not purchased for fair-market value, it was incumbent upon [Fillbright] to show that in fact it was a fair[-]market[-]value transfer. Plaintiff relied solely on a legal argument for her position and presented no testimony to the hearing officer concerning the fair[-]market value of the transfer. Under these circumstances, this court is unable to find that the Department erred. Accordingly, the decision of the Department is hereby affirmed."
This appeal followed. While her case was pending on appeal, Fillbright died. Martha Gillmore was appointed as executrix of Fillbright's estate and proceeds herein as special administratrix on behalf of the decedent.

II. ANALYSIS
Plaintiff claims the Department's regulation requiring an annuity be paid "in approximately equal periodic payments" interposes a requirement for the purposes of Medicaid eligibility that does not exist in federal law. She claims administering this additional requirement is improper and illegal. The Department claims the requirement is consistent with federal law and is an enforceable regulation justifying its final administrative decision.

A. Standard of Review
When reviewing the appeal of an administrative decision, this court reviews the agency's decision, not the decision of the trial court. Harris v. Department of Human Services, 345 Ill.App.3d 764, 766, 281 Ill.Dec. 442, 803 N.E.2d 1063, 1065 (2004). If the decision involves a pure question of law, as does the one before us, our review is de novo. Carpetland U.S.A., Inc. v. Illinois Department of Employment Security, 201 Ill.2d 351, 369, 267 Ill.Dec. 29, 776 N.E.2d 166, 177 (2002).

B. Background of the Medicaid Act
Title XIX of the Social Security Act (Medicaid Act) (42 U.S.C. §§ 1396 through 1396v (2000)) is a cooperative federal/state program, funded in large part by the federal government and administered by the states. Alexander v. Choate, 469 U.S. 287, 289 n. 1, 105 S.Ct. 712, 714 n. 1, 83 L.Ed.2d 661, 664 n. 1 (1985). While state participation in the program is voluntary, participating states must adopt plans that comply with certain requirements imposed by federal statutes and regulations. Wilder v. Virginia Hospital Ass'n, 496 U.S. 498, 502, 110 S.Ct. 2510, 2513, 110 L.Ed.2d 455, 462 (1990).
Illinois elected to participate in the Medicaid program and designated the Department (as successor agency of the Illinois Department of Public Aid pursuant to section 80-10(d) of the Department of Human Services Act (20 ILCS 1305/80-10(d) (West 2002))) to administer the program. 20 ILCS 2205/2205-5 (West 2002). The Department was required to implement a medical-assistance plan consistent with the guidelines contained in the Medicaid Act, and the regulations promulgated thereunder, *886 and to submit it to the United States Department of Health and Human Services (HHS) for approval. Upon approval, the State became eligible for reimbursement for a portion of the expenditures made in providing specific types of medical assistance to eligible individuals under the plan. See 42 U.S.C. § 1396b (a)(2000).
Under the Illinois program, two groups of persons receive Medicaid benefits: (1) the "categorically needy," who receive welfare or cash-assistance payments from the State and are automatically eligible for Medicaid benefits (305 ILCS 5/5-2(1) (West 2002); 42 C.F.R. §§ 435.100 through 435.170 (2003)) and (2) the "medically needy," who have incomes too high to qualify for cash-welfare payments but low enough to qualify for medical assistance (305 ILCS 5/5-2(2) (West 2002); 42 C.F.R. §§ 435.300 through 435.350 (2003)). The Department identifies people like plaintiff who fall into this second category as MANG recipients.
MANG recipients must meet certain asset requirements before being declared eligible to receive Medicaid benefits. Section 1396p(d)(6) of the Medicaid Act provides that the term "trust" includes an annuity to the extent and in such manner as the Secretary of HHS specifies. 42 U.S.C. § 1396p(d)(6) (2000). At the center of plaintiff's claim is the interpretation of the Health Care Financing Administration (now known as the Centers for Medicare and Medicaid Services) State Medicaid Manual, known as "Transmittal 64." Transmittal 64 is the only guidance relating to annuities ever provided by the Secretary.

C. Federal Requirements
Transmittal 64 was issued to provide instructions to Medicaid caseworkers at the state level regarding transfers of assets for less than fair-market value. State Medicaid Manual, Health Care Financing Administration Pub. No. 45-3, Transmittal 64, § 3258 (November 1994). We note that a guideline such as Transmittal 64, although not a statute or a regulation, is entitled to deference by the courts as long as it is "consistent with the plain language and purposes of the statute and if [it is] consistent with prior administrative views." Cleary v. Waldman, 167 F.3d 801, 808 (3d Cir.1999).
According to Transmittal 64, annuities are usually purchased to provide a source of income for retirement. However, they are also sometimes used to shelter assets so that the purchaser of the annuity or the purchaser's spouse can qualify for Medicaid. The former is not subject to an eligibility penalty, while the latter is. To capture those annuities that shelter assets, while not penalizing annuities validly purchased as part of a retirement plan, Transmittal 64 states:
"[A] determination must be made with regard to the ultimate purpose of the annuity (i.e., whether the purchase of the annuity constitutes a transfer of assets for less than fair[-]market value). If the expected return on the annuity is commensurate with a reasonable estimate of life expectancy of the beneficiary, the annuity can be deemed actuarially sound.
* * *
If the individual is not reasonably expected to live longer than the guarantee period of the annuity, the individual will not receive fair[-]market value for the annuity based on the projected return. In this case, the annuity is not actuarially sound and a transfer of assets for less than fair[-]market value has taken place, subjecting the individual to a penalty." State Medicaid Manual, Health Care Financing Administration Pub. No. 45-3, Transmittal 64, § 3258.9(B) (November 1994).
*887 According to Transmittal 64, actuarial soundness and fair-market value are the keys in determining the likely intent of the purchaser and, ultimately, the purchaser's Medicaid eligibility.

D. State's Administrative Regulations
Section 5-2(12) of the Public Aid Code (305 ILCS 5/5-2(12) (West 2002)) provides that the "Department shall by rule establish the amounts of assets to be disregarded in determining eligibility for medical assistance, which shall at a minimum equal the amounts to be disregarded under [federal law]." In an attempt to provide further guidance with regard to the transfer of assets, the Department promulgated administrative regulations, which provide, in pertinent part, as follows:
"(e) A transfer is allowable if:
* * *
(13) the transfer was to an annuity, the expected return on the annuity is commensurate with the estimated life expectancy of the person, and the annuity pays benefits in approximately equal periodic payments." 89 Ill. Adm.Code § 120.387(e)(13) (Conway Greene CD-ROM March 2002).
Plaintiff claims this administrative regulation is an improper additional requirement for the allowable purchase of annuities. She claims her purchase of the balloon annuity would have been proper under federal law, but with the implementation of this state's administrative regulation, her purchase is considered a nonallowable transfer of assets. We must determine whether the provision of section 120.387(e)(13) of Title 89 of the Illinois Administrative Code (89 Ill. Adm.Code § 120.387(e)(13) (Conway Greene CD-ROM March 2002)), requiring annuity benefits be paid "in approximately equal periodic payments," violates the Medicaid Act.

E. Application of Federal and State Requirements
This is a case of first impression in Illinois and from the best we can discern, nationally, as well, although other states such as Indiana have a similar administrative regulation. See 405 Ind. Admin. Code tit. 405, r. 2-3-1.2(b)(2) (2004) (annuity must provide substantially equal monthly payments and not have a balloon). Both plaintiff and the Department cite certain cases for guidance (see Dean v. Delaware Department of Health & Social Services, C.A. No. 00A-05-006, 2000 WL 33201237 (Del.Super.Ct. December 6, 2000) (unpublished memorandum opinion) (2000 WL 33201237, 2000 Del.Super. LEXIS 490), aff'd, 781 A.2d 693 (Del.2001)); Mertz v. Houstoun, 155 F.Supp.2d 415 (E.D.Pa.2001); Dempsey v. Department of Public Welfare, 756 A.2d 90 (Pa.Commw.Ct.2000), yet none contemplate the issue before us  whether the purchase of a back-loaded or ballooned annuity with a term equivalent to the purchaser's life expectancy is considered a purchase for fair-market value.
Relying on the language of Transmittal 64, plaintiff contends "fair-market value" and "actuarial soundness" are indistinct concepts. She claims if the term of the annuity does not extend beyond the purchaser's life expectancy (actuarially sound), then the annuity was purchased for fair-market value. We disagree. Fair-market value and actuarial soundness are two separate and distinct requirements. Both Transmittal 64 and the Department's regulations support the fact that both of the two separate requirements must be met.
We begin our analysis with acknowledging the purpose for the requirement that annuities be purchased for fair-market value. A purchase for fair-market value *888 indicates to the Medicaid caseworker that the purpose for the annuity was for retirement planning and not for sheltering assets. A reliable manner to determine that purpose is to evaluate the terms of the annuity.
Transmittal 64 provides an example demonstrating the difference between an annuity purchased for fair-market value and one that was not. If a male with a life expectancy of 14 years purchases an annuity to be paid over the course of 10 years, the annuity is considered actuarially sound. The annuity benefits are fully paid within the person's estimated life expectancy. However, if a male with a life expectancy of 6 years purchases an annuity to be paid over the course of 10 years, the annuity is not actuarially sound and is considered a transfer of assets for less than fair-market value subject to an eligibility penalty. In theory, in the latter case, the annuity benefits would be paid for four years after the purchaser's death. The purchaser paid the amount equivalent to receiving 10 years of benefits, but due to his death, he only received 6 years of benefits. He paid out more than the value of what he received, making it a transfer of assets for less than fair-market value. The purchaser was not able to use the fair-market value of the amount paid into the annuity due to his death.
The examples demonstrate that the concepts of fair-market value and actuarially sound are distinct yet both are necessary to qualify an annuity as an allowable transfer of assets. The Department's regulation requires both. See 89 Ill. Adm.Code § 120.387(e)(13) (Conway Greene CD-ROM March 2002) ("the expected return on the annuity is commensurate with the estimated life expectancy" and"the annuity pays benefits in approximately equal periodic payments"). Transmittal 64 distinguishes between the two concepts. See State Medicaid Manual, Health Care Financing Administration Pub. No. 45-3, Transmittal 64, § 3258.9(B) (November 1994) (uses the scenario set forth above where annuity was not actuarially sound to demonstrate that it was not purchased for fair-market value).

F. Plaintiff's Annuity
Looking to the terms of plaintiff's annuity, we determine her purchase was actuarially sound yet was purchased for less than fair-market value. At the time of her purchase, plaintiff had a life expectancy of 116 months. For a single premium in the amount of $73,713.00, plaintiff was to receive 115 monthly payments of $188.94 and a final payment in month 116 of $72,741.94. The annuity is actuarially sound because annuity payments will not extend beyond her estimated life expectancy. However, in theory, plaintiff would receive the bulk value of the annuity on the day before her death. This is the equivalent to the scenario set forth above and the one contained in Transmittal 64, where the payments extend beyond the person's estimated life expectancy. Due to her death, plaintiff could not use the fair market value of her purchase. It is unreasonable to believe the 116th payment of $72, 741.94 would be put to use as a retirement tool on the last day of her life. More realistically, the final payment on plaintiff's annuity would not be used as her retirement income but as a payment to the designated beneficiary.
The purchase of the back-loaded annuity with a benefit term equivalent to plaintiff's life expectancy cannot be deemed to be a valid retirement tool when the overwhelmingly substantial portion of the benefit would be paid the day before plaintiff's expected death. Plaintiff's purchase was was actuarially sound but was a purchase for less than fair-market value. Based upon its terms, this type of plan is more *889 likely viewed as a way to shelter assets for the purpose of Medicaid eligibility than as a valid retirement tool.
The provisions of section 120.387(e)(13) of Title 89 of the Illinois Administrative Code (89 Ill. Adm.Code § 120.387(e)(13) (Conway Greene CD-ROM March 2002)) do not impose an additional requirement to federal law as plaintiff urges but rather provide further guidance to the federal regulations. We affirm the Department's final administrative decision implementing the penalty period based on plaintiff's purchase of a back-loaded annuity as a nonallowable transfer of assets. See 42 U.S.C. § 1396p(c)(1)(A) (2000) (requiring participating states recognize a period of ineligibility for benefits for individuals who transfer assets for less than fair-market value).

G. The Department's Cross-Appeal
In its brief, the Department claims plaintiff's appeal should be dismissed because she failed to serve the Illinois Department of Public Aid, a necessary party to the action. This was the subject of a motion to dismiss in the circuit court. The circuit court denied the motion, finding the Illinois Department of Public Aid was "part of" the Department for the purposes of plaintiff's action. On appeal, but without filing a notice of cross-appeal, the Department claims the court's order denying its motion to dismiss was in error. The Department's failure to file a cross-appeal precludes our consideration of the claim. See Abdul-Karim v. First Federal Savings & Loan Ass'n of Champaign, 101 Ill.2d 400, 412, 78 Ill.Dec. 369, 462 N.E.2d 488, 494 (1984) ("[r]eviewing courts in this State refuse to consider complaints raised by an appellee in his brief concerning action taken by the circuit court when he has failed to file a cross-appeal from the circuit court's decision").

III. CONCLUSION
For the foregoing reasons, we affirm the Department's final administrative order.
Affirmed.
TURNER and McCULLOUGH, JJ., concur.