# Illinois Official Reports

## Appellate Court

---

### *Moore v. State*, 2017 IL App (4th) 160414

---

| | |
|---|---|
| Appellate Court Caption | CHRISTINE P. MOORE, as Executrix of the Estate of Elda Buckley, Deceased, Plaintiff-Appellant, v. THE STATE OF ILLINOIS, THE DEPARTMENT OF HUMAN SERVICES and MICHELLE R.B. SADDLER, Secretary of Human Services, and THE DEPARTMENT OF HEALTHCARE AND FAMILY SERVICES and JULIE HAMOS, Director of Healthcare and Family Services, Defendants-Appellees. |
| District & No. | Fourth District<br>Docket No. 4-16-0414 |
| Filed | April 11, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Sangamon County, No. 13-MR-802; the Hon. Brian T. Otwell, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Duane D. Young, of LaBarre, Young & Behnke, of Springfield, for appellant.<br><br>Lisa Madigan, Attorney General, of Chicago (David L. Franklin, Solicitor General, and Carl J. Elitz, Assistant Attorney General, of counsel), for appellees. |

JUSTICE HOLDER WHITE delivered the judgment of the court, with opinion.
Justices Steigmann and Pope concurred in the judgment and opinion.

**OPINION**

¶ 1    In October 2011, Elda Buckley, now deceased, purchased an insurance policy that contained a rider payable to Christine P. Moore, the executrix of Buckley's estate, upon Buckley's death. The same day, Buckley applied for Medicaid benefits under the Illinois Public Aid Code (Code) (305 ILCS 5/1-1 to 15-11 (West 2010)), which contains a provision prohibiting the transfer of certain assets for less than fair market value. Following a hearing, defendant, the State of Illinois, acting through the Department of Human Services (Human Services) and its secretary, Michelle R.B. Saddler, and the Department of Healthcare and Family Services and its director, Julie Hamos (collectively, Departments), found Buckley's insurance policy was purchased for less than fair market value and therefore constituted a nonallowable transfer of assets subject to penalty. The current secretaries of the Departments, James T. Dimas and Felicia F. Norwood, respectively, have been substituted for Saddler and Hamos. During the pendency of the administrative-review proceedings, Moore also passed away, and Kevin McDermott, the Sangamon County Public Administrator (Public Administrator), was substituted for Moore pursuant to letters of office. In April 2015, the circuit court affirmed the Departments' findings.

¶ 2    The Public Administrator appeals, asserting the Departments erred in finding the purchase of the insurance policy was a nonallowable transfer subject to penalty under the Code. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4    In October 2011, Buckley resided in a long-term care facility at a monthly rate of $5400. At that time, Moore filed an application for medical assistance (Medicaid) on Buckley's behalf. On the same date, Moore, on Buckley's behalf and using Buckley's funds, purchased a single-premium whole life insurance policy for $15,000. The policy consisted of a base policy purchased for $940.90 and a recurring death-benefit rider purchased for $14,059.10, and Moore was the beneficiary under the policy. In its initial year, the cash value of the base policy was $767.05, and the rider had a cash value of $0.

¶ 5    In April 2012, Buckley received form HFS 458LTC from the local Human Services' office, advising her that her Medicaid application had been approved but included a penalty period based on Buckley's purchase of the insurance policy, which it considered to be a nonallowable asset transfer.

¶ 6    The following month, Moore appealed the imposition of the penalty period to the Human Services' Bureau of Assistance Hearings, arguing the local office erred by determining the purchase of Buckley's single-premium whole life insurance policy was a nonallowable asset transfer. Rather, Moore contended the policy was purchased for fair market value and therefore constituted an allowable transfer. After considering the evidence, the Departments affirmed the penalty period after finding Buckley obtained the insurance policy the day she filed for

Medicaid, which made the policy subject to review. The Departments determined, pursuant to section 120.387 of Title 89 of the Illinois Administrative Code (Administrative Code) (89 Ill. Adm. Code 120.387, amended at 35 Ill. Reg. 18645 (eff. Jan. 1, 2012)), that the insurance policy was not purchased for fair market value because the $14,000 rider represented a vehicle by which Buckley received nothing in return. In August 2013, the Departments entered a final administrative decision affirming the findings of the hearing officers.

¶ 7    In October 2013, Moore filed an amended complaint for administrative review in the circuit court of Sangamon County. The complaint alleged the Departments erred by arbitrarily and capriciously finding the insurance policy was a nonallowable transfer of an asset for less than fair market value. In April 2016, the court entered an order affirming the Departments' decision.

¶ 8    This appeal followed.

¶ 9                              II. ANALYSIS

¶ 10    On appeal, the Public Administrator argues the Departments erred by finding the insurance policy constituted a nonallowable transfer. We begin by addressing the standard of review.

¶ 11                         A. Standard of Review

¶ 12    In an administrative review appeal, we review the decision of the agency, not the decision of the circuit court. *Outcom, Inc. v. Illinois Department of Transportation*, 233 Ill. 2d 324, 337, 909 N.E.2d 806, 814 (2009). The Public Administrator asserts that the appropriate standard of review is *de novo*, as a state agency's interpretation of the law is not binding on a reviewing court. See *Van Dyke v. White*, 2016 IL App (4th) 141109, ¶ 19, 60 N.E.3d 1009. Conversely, the Departments argue that we should apply a clearly erroneous standard of review because this situation involves a mixed question of law and fact. We agree with the Departments.

¶ 13    Where, such as here, the underlying facts are not in dispute, we review the agency's interpretation of the law as applied to the facts. *Id.* "Mixed questions of fact and law are questions in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard, or to put it another way, whether the rule of law as applied to the established facts is or is not violated." (Internal quotation marks omitted.) *Id.*

¶ 14    In this case, the agency determined whether the Medicaid statute's prohibition against certain property transfers applied to the undisputed facts—Buckley's purchase of an insurance policy. In such instances, we will not overturn the agency's decision unless it is clearly erroneous, which means we are left with the definite and firm conviction that the agency has made a mistake. *Id.*

¶ 15    Having established the standard of review, we now turn to the merits of this appeal.

¶ 16                         B. Transferring Assets

¶ 17    In 1965, Congress enacted Title XIX of the Social Security Act, otherwise known as the Medicaid Act (42 U.S.C. § 1396 *et seq.* (2012)), for the purpose of providing indigent individuals with health care. *Gillmore v. Illinois Department of Human Services*, 218 Ill. 2d 302, 304-05, 843 N.E.2d 336, 338 (2006). Those who enroll in the Medicaid program are expected to deplete their own assets prior to accepting any government assistance. See *Vincent*

*v. Department of Human Services*, 392 Ill. App. 3d 88, 94, 910 N.E.2d 723, 729 (2009). Such a requirement is necessary to preserve scarce public medical resources for those who are truly indigent. *McDonald v. Department of Human Services*, 406 Ill. App. 3d 792, 793, 952 N.E.2d 21, 23 (2010).

¶ 18       States that choose to participate in the federal Medicaid programs have the ability to design their own plans, but they must also meet certain federal guidelines. *Gillmore*, 218 Ill. 2d at 305, 843 N.E.2d at 338; see also 42 U.S.C. § 1396p (2012). To meet federal requirements, section 5-2.1 of the Code (305 ILCS 5/5-2.1 (West 2010)) prohibits a person seeking Medicaid from making "a voluntary or involuntary assignment or transfer of any legal or equitable interests in real property or in personal property, whether vested, contingent or inchoate, for less than fair market value." This same prohibition is contained in section 120.388 of Title 89 of the Illinois Administrative Code (89 Ill. Adm. Code 120.388, added at 35 Ill. Reg. 18645 (eff. Jan. 1, 2012)), which applies to the Department of Healthcare and Family Services' determination of whether an enrollee has improperly transferred assets while seeking government assistance under the Medicaid Act. Under the Administrative Code, a resident of a long-term care facility who transfers his or her assets for "less than fair market value" within 60 months of applying for medical assistance, such as Medicaid, may be subject to a period of ineligibility. 89 Ill. Adm. Code 120.388(a), (h), added at 35 Ill. Reg. 18645 (eff. Jan. 1, 2012).

¶ 19       The Administrative Code further defines fair market value as "an estimate of the value of an asset if sold at the prevailing price at the time it was actually transferred." 89 Ill. Adm. Code 120.388(f), added at 35 Ill. Reg. 18645 (eff. Jan. 1, 2012). In making its determination of whether an individual has improperly transferred assets, the Department of Healthcare and Family Services "shall use all reasonable means available and consider all relevant facts and circumstances relating to the asset and the transaction, including, but not limited to: the cost or price paid for the asset, whether the transaction was at arm's length, comparable sales, replacement cost, and expert opinion." 89 Ill. Adm. Code 120.388(f)(1), added at 35 Ill. Reg. 18645 (eff. Jan. 1, 2012). "For an asset to be considered transferred for [fair market value], the compensation received for the asset must be in a tangible form with intrinsic value that is roughly equivalent to or greater than the value of the transferred asset." 89 Ill. Adm. Code 120.388(f)(2), added at 35 Ill. Reg. 18645 (eff. Jan. 1, 2012).

¶ 20       Here, Buckley purchased the insurance policy for approximately $15,000. Upon her death, Moore would receive death benefits in the amount of $1000. Moore was also the beneficiary of a $14,000 rider. Accordingly, the Public Administrator asserts Buckley's $15,000 payment in exchange for a $15,000 insurance payout demonstrates Buckley paid fair market value, during an arm's-length transaction, for the policy. We disagree.

¶ 21       In evaluating the Public Administrator's argument, we find *Gillmore v. Department of Human Services*, 354 Ill. App. 3d 497, 822 N.E.2d 882 (2004), *aff'd*, 218 Ill. 2d 302, 843 N.E.2d 336 (2006), instructive. In *Gillmore*, a case in which the decedent had purchased an annuity while seeking Medicaid, this court explained, "[a] purchase for fair-market value indicates to the Medicaid caseworker that the purpose for the annuity was for retirement planning and not for sheltering assets." *Id.* at 503, 822 N.E.2d at 887-88. This court and, later, the supreme court, held the annuity, which contained a balloon payment that would extend beyond the purchaser's life expectancy, was not purchased for fair market value. *Id.* at 504, 822 N.E.2d at 888; *Gillmore*, 218 Ill. 2d at 312, 324, 843 N.E.2d at 342, 348. The supreme court determined such annuities "have been structured to bypass Medicaid limits and

consequently to defeat the purpose of the Medicaid Act." *Gillmore*, 218 Ill. 2d at 319, 843 N.E.2d at 346.

¶ 22 Although the present case involves an insurance policy rather than an annuity, the same principles apply. The apparent purpose of Buckley's purchase of the insurance policy, of which she would receive none of the proceeds, was to shelter assets from Medicaid while ensuring Moore received the benefits of her assets. Thus, just as in *Gillmore*, Buckley "paid out more than the value of what [she] received, making it a transfer of assets for less than fair market value." *Gillmore*, 354 Ill. App. 3d at 503-04, 822 N.E.2d at 888.

¶ 23 We find further support for our position in *Tjaden v. State of Illinois*, 2013 IL App (4th) 120768, 11 N.E.3d 812. In *Tjaden*, the decedents purchased life insurance policies and placed the policies in a trust for their funeral expenses. *Id.* ¶¶ 5, 20. However, the trusts contained a condition—if no bill for funeral expenses was presented within 45 days of the decedents' respective deaths, the proceeds of the policy passed condition-free to their residual beneficiaries. *Id.* The parties presented no evidence of a burial contract to demonstrate the funds were guaranteed for funeral expenses. *Id.* ¶ 56. This court, in affirming the circuit court, concluded the insurance policies constituted nonallowable transfers of assets where the terms of the trusts created a condition allowing the funds to transfer to their beneficiaries. *Id.* ¶ 57; see also *Evans v. State of Illinois*, 2013 IL App (4th) 121082, ¶ 38, 13 N.E.3d 752. Similarly, we have no evidence in this case to indicate the proceeds from the insurance policy were to be used for Buckley's benefit—*i.e.*, her funeral expenses. Rather, the proceeds directly benefitted Moore, without any condition requiring those funds to be used for funeral expenses.

¶ 24 Prior to purchasing the insurance policy, Buckley had $15,000 in cash assets available to use toward her long-term care. Instead, she used those funds to buy an insurance policy that would benefit Moore. Because Buckley did not receive the benefit of this policy, the Departments properly deemed this transaction as one procured for less than fair market value. To find otherwise would encourage individuals seeking Medicaid coverage to transfer their wealth by means of an insurance rider, thus undermining Medicaid's purpose of providing health care for the indigent.

¶ 25 Accordingly, we conclude the Departments properly found Buckley's purchase was a nonallowable transfer of assets for less than fair market value.

¶ 26                                              III. CONCLUSION
¶ 27 For the foregoing reasons, we affirm the circuit court's judgment.

¶ 28 Affirmed.