2022 IL App (1st) 191842-B

SIXTH DIVISION
December 16, 2022 Filing Date

No. 1-19-1842

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| PRATE ROOFING AND INSTALLATIONS, LLC, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18 CH 9826 |
| | ) | |
| LIBERTY MUTUAL INSURANCE CORPORATION, | ) | The Honorable |
| THE DEPARTMENT OF INSURANCE, JENNIFER | ) | Caroline Kate Moreland, |
| HAMMER, in Her Official Capacity as Director of | ) | Judge, Presiding. |
| Insurance, and PATRICK RILEY, in His Capacity as | ) | |
| Hearing Officer, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

_____

JUSTICE ODEN JOHNSON delivered the judgment of the court, with opinion.
Presiding Justice Mikva and Justice Connors concurred in the judgment and opinion.

**OPINION**

¶ 1 Plaintiff Prate Roofing and Installations, LLC (Prate), appeals an order from the circuit court of Cook County, which affirmed the final decision of the Director of Insurance in favor of defendant, Liberty Mutual Insurance Company (Liberty Mutual), and against plaintiff, Prate, regarding the parties' workers' compensation insurance dispute. The parties disputed whether

Prate owed Liberty Mutual additional workers' compensation insurance premiums because certain subcontractors hired by Prate did not have individual coverage. Prate challenged that determination before the Department of Insurance (DOI), wherein Hearing Officer Patrick Riley (Hearing Officer Riley) presided over the proceedings. Based on Hearing Officer Riley's findings, then-Director of the DOI Jennifer Hammer[1] entered an order agreeing with Liberty Mutual and finding that Prate owed additional workers' compensation premiums in the amount of $127,305.

¶ 2      Prate subsequently filed suit in the circuit court of Cook County, seeking administrative review of the Director's final decision and an additional claim for declaratory judgment as to the amount of the premium owed to Liberty Mutual. The circuit court affirmed the Director's decision and dismissed the claim for declaratory judgment.

¶ 3      Prate has timely appealed, contending that (1) the DOI lacked authority to issue its final order, which is therefore void pursuant to this court's holding in *CAT Express, Inc. v. Muriel*, 2019 IL App (1st) 181851; (2) the circuit court erred in dismissing its request for declaratory relief on an issue upon which the DOI had expressly declined and lacked authority to rule; and (3) the DOI erred in finding that ARW Roofing LLC (ARW LLC) had its own employees who worked on Prate jobs to justify Liberty Mutual charging an additional premium of $127,305. In our initial disposition of this case, we vacated the DOI's final order, finding that it lacked authority to resolve the parties' dispute, and further vacated the judgment of the circuit court

_____

[1]At the time of the Director's final order, the Director of the Department was Jennifer Hammer, who was initially named as an appellee in this case. She has been succeeded in that position by Robert H. Muriel. 735 ILCS 5/2-1008(d) (West 2020).

affirming the DOI's order, as such order was void. *Prate Roofing & Installations, LLC v. Liberty Mutual Insurance Corp.*, 2021 IL App (1st) 191842-U (*Prate I*).

¶ 4    Liberty Mutual filed a petition for leave to appeal to the supreme court, which was granted. The supreme court reversed this court's previous ruling, finding that the DOI did in fact have the statutory authority to resolve the dispute under section 462 of the Illinois Insurance Code (Code) (215 ILCS 5/462 (West 2018)). *Prate Roofing & Installations, LLC v. Liberty Mutual Insurance Corp.*, 2022 IL 127140, ¶ 41. The court then remanded the case to this court to address the parties' remaining arguments. *Id.* For the reasons that follow, we reverse the finding of the DOI.

¶ 5                                  I. BACKGROUND

¶ 6    A complete background for this case was detailed in *Prate I*. However, as that was an unpublished disposition, we will restate it here.

¶ 7                          A. Proceedings Before the DOI

¶ 8    This case came before the DOI on appeal by Prate after it initially sought administrative relief from the Illinois Workers' Compensation Appeals Board (Board). Prate filed an appeal with the Board to contest Liberty Mutual's determination that it owed additional workers' compensation premiums in the amount of $127,305. In May 2016, the Board held a hearing on Prate's dispute and issued its case summary and decision on June 2, 2016, which was disclosed to the parties in a letter from the National Council on Compensation Insurance (NCCI). In its letter, the NCCI informed the parties that the Board did not have enough information to rule on whether Liberty Mutual improperly charged Prate for exposure to liability due to Prate's use of a possibly uninsured subcontractor and that Prate had the right to appeal. Prate subsequently appealed the decision to the DOI.

¶ 9        Hearing Officer Riley was assigned to the case. Following discovery, both parties agreed to waive their rights to an in-person hearing before the DOI and requested that the issues be determined by written submissions and exhibits. Upon review of the submissions and exhibits, Hearing Officer Riley made written findings of fact, conclusions of law, and recommendations.

¶ 10        Defendants aside, there are four entities relevant to this case: Prate, ARW Roofing, Inc. (ARW, Inc.), Reliable Trade Services, Inc. (RTS), and ARW LLC. Prate was a roofing and construction installations contractor organized as an Illinois limited liability company[2] and owned by Cynthia Rosetti. Michael Prate (M. Prate) was a former agent and officer of Prate but at the time of these proceedings served as an employee. ARW Inc. was an Illinois company that entered into agreements with Prate for contracting services. ARW Inc. was involuntarily dissolved in August 2015. RTS was an Illinois corporation formed on August 1, 2013, that also entered into contracts with Prate. ARW LLC was a limited liability company organized by Emmolly Corporation (Emmolly), of which M. Prate was president. According to M. Prate, Emmolly organized ARW LLC for the purpose of purchasing RTS, but the purchase did not occur, and Emmolly signed over ownership of ARW Inc. to Michael Gurdak (M. Gurdak). ARW LLC also entered into contracts with Prate during the policy period at issue.

¶ 11        According to Prate, from May 1, 2013, to May 1, 2014, ARW Inc. carried workers' compensation insurance. RTS listed ARW Inc.'s policy as its workers' compensation coverage, claiming that ARW Inc.'s name was changed to RTS.

¶ 12        In 2013, Prate sought and obtained workers' compensation coverage through the Illinois Assigned Risk Plan. Liberty Mutual was randomly assigned as Prate's workers' compensation

_____

[2]Although the hearing officer's written findings describe Prate as a "limited liability corporation," we take judicial notice that in the state of Illinois, LLC refers to a limited liability company.

insurance carrier and issued an initial policy that became effective on October 18, 2013. Liberty Mutual issued Prate a renewal policy (WC5-34S-540426), the policy at issue, which was effective October 18, 2014, through June 28, 2015. Pursuant to the policy provisions, in 2015, Prate was subject to both a self-audit and a premium audit. The premium audit would be conducted by Liberty Mutual to determine if Prate had properly provided workers' compensation insurance certificates for all of its subcontractors; Lisa Murphy was assigned as the auditor for Liberty Mutual's audit.

¶ 13        As part of the self-audit, Prate disclosed that it had made payments to RTS, ARW Inc., and ARW LLC between October 18, 2014, and June 28, 2015. Murphy testified that, while Prate provided certificates of workers' compensation insurance coverage for RTS, it did not present one for ARW LLC. Based on those findings, Liberty Mutual argued before the DOI that Prate utilized services from ARW LLC, which did not carry workers' compensation coverage and thus exposed Liberty Mutual to liability, for which it assessed Prate an additional premium of $127,305.

¶ 14        Conversely, Prate argued that, because ARW LLC had no employees, that entity could not perform work that would need to be covered under Illinois workers' compensation law or the NCCI Basic Manual[3] and, thus, Prate did not expose Liberty Mutual to liability. Accordingly, Prate argued that it would be improper to factor any payments to that entity into Liberty Mutual's premium calculations.

---

[3]The NCCI Basic Manual for Workers Compensation and Employers Liability Insurance contains rules, classification descriptions, rates/loss costs for each classification and state-specific exceptions for writing workers compensation insurance. *Basic Manual for Workers Compensation and Employers Liability Insurance*, NCCI, https://www.ncci.com/ServicesTools/Pages/BM2001.aspx (last visited Dec. 8, 2022) [https://perma.cc/ZK7D-L9TK].

¶ 15　　　　Prate presented evidence addressing this issue, including two affidavits from M. Prate, who describes himself as an "employee" of Prate; a number of attachments to M. Prate's second affidavit; and an affidavit from M. Gurdak, who was the president of RTS.

¶ 16　　　　As noted above, these affidavits stated that ARW LLC had been organized by Emmolly Corporation to purchase RTS but that the purchase never happened. Meanwhile, Prate had entered into subcontracts with ARW LLC to complete certain roofing jobs. ARW LLC completed those jobs by subcontracting with RTS to complete the jobs for Prate. Acknowledging that there was some ambiguity with the entities' names, M. Prate's affidavits stated that prior to August 1, 2013, RTS was called ARW Inc., which was signed over to M. Gurdak. He further acknowledged that there was some ambiguity as to the status of ownership and that M. Gurdak should have filed documentation with the Secretary of State regarding the entity's ownership, but nevertheless confirmed that ARW Inc. and ARW LLC were two separate organizations.

¶ 17　　　　In his first affidavit, M. Prate explained that "[s]ince at least May 1, 2013, ARW Roofing, Inc. and Reliable Trade Services, Inc. carried workers' compensation insurance through American Interstate Insurance Company, Policy No. AVWCIL2200772013. All of the employees who performed work on Prate Projects were covered under this policy." M. Prate averred that ARW LLC "never had any employees, and, thus, no [ARW LLC] employee ever performed any work on any Prate Project." M. Prate also stated that any work that was the subject of a contract between Prate and either ARW LLC or ARW Inc. "was performed entirely by employees of [ARW Inc.] or [RTS]."

¶ 18　　　　M. Prate also attached additional supporting documents to his second affidavit, including a March 2016 letter written by M. Gurdak to the NCCI; a letter written by Thomas Low of the

Beth & Rudnicki Insurance Agency; a "spreadsheet showing all the jobs [for which] Prate issued payment to 'ARW Roofing' during the policy audit period along with the actual labor cost for each job"; documents for each job referenced in the spreadsheet; copies of invoices; Prate's checks to 'ARW Roofing' and documents provided by [RTS] showing that it performed all labor and the cost of such labor.

¶ 19     M. Gurdak's March 21, 2016, letter to the NCCI stated that "ARW Roofing" had not had any employees since "September 23, 2013, and there are still none as of today." The letter written by Low on September 30, 2015, said that his insurance agency did "not write any Workers Compensation coverage for ARW Roofing." Mr. Low explained that "[a]ll of the employees [were] employed by [RTS], and [RTS] provide[d] all of the labor to ARW Roofing." Mr. Low stated plainly that "ARW Roofing does not have any employees." The spreadsheet showed, per M. Prate's affidavit, 13 jobs for which Prate paid "ARW Roofing." The next exhibit included documents for the jobs referenced on the spreadsheet, including invoices, checks, and documents from RTS showing that it actually paid the employees on the job and also paid workers' compensation for the labor.

¶ 20     M. Gurdak reiterated in his affidavit that during the relevant time period "all work which was the subject of agreements or contracts between [Prate] on the one hand, and [ARW LLC], [ARW Inc.], and/or [RTS] on the other hand, *** was performed entirely by employees of [RTS]" and that all payments from Prate to ARW LLC, ARW Inc., or RTS were used to pay ARW Inc. or RTS for the "labor and material costs" of the projects.

¶ 21     Hearing Officer Riley found that it was undisputed that Prate contracted with several subcontracting entities: in 2013, Prate subcontracted with both ARW Inc. and RTS, which listed the workers' compensation policy used by ARW Inc. At issue was whether Liberty

Mutual justifiably assessed Prate an additional premium for its use of services by ARW LLC, which it deemed an uninsured contractor. Hearing Officer Riley noted that the central questions to be considered were (1) did ARW LLC have a workers' compensation insurance policy during Prate's period of coverage at issue in the hearing, (2) did ARW LLC have any employees who were required to be covered according to Prate's policy, (3) did the arrangements between Prate and ARW LLC expose Liberty Mutual to workers' compensation liability and subject Prate to an increased premium, and (4) if Liberty Mutual was exposed to liability from ARW LLC, did Liberty Mutual appropriately use certain payments from Prate to ARW LLC as the basis for calculating the additional premium?

¶ 22    With respect to the first question, Hearing Officer Riley found that it was undisputed that ARW LLC did not have a workers' compensation insurance policy of its own during Prate's policy period of October 2014 through June 2015. He noted that "a common pattern in the filings offered [by the parties] that initially complicates th[e] determination [was] the conflation of ARW LLC with ARW Inc." As an example, the hearing officer noted that both parties referred to an NCCI ownership name change ruling regarding "a subcontractor ARW." However, the NCCI did not define which "ARW" was the subject of its ruling. Additionally, the NCCI stated that the "Board could not confirm or refute whether the legal status issue of ARW being an 'LLC' or an 'Inc.' when work was performed had a bearing on the dispute." Hearing Officer Riley also found that M. Prate, M. Gurdak, and then-president Cynthia Rosetti were all knowledgeable about the status and business dealings of the two entities, as detailed in affidavits and answers to Liberty Mutual's interrogatories. Hearing Officer Riley ultimately concluded that ARW Inc. and ARW LLC were legally independent of one another despite common ownership or management, and further that ARW LLC did not have insurance

coverage, either independently or in association with another entity during the policy period at issue.

¶ 23    Regarding the second issue, Hearing Officer Riley noted Prate's assertion that ARW LLC had no employees and that, instead, the labor was supplied by RTS. That assertion was echoed by both M. Prate and M. Gurdak in their respective affidavits. However, Hearing Officer Riley concluded that ARW LLC was considered a separate entity for the purposes of workers' compensation coverage and that ARW LLC likely had employees to carry out contracts on behalf of Prate and/or RTS. Hearing Officer Riley indicated that this conclusion was based on other information supplied during discovery, most notably, documents supplied by Prate that listed RTS at the top and appeared to be proofs of payment by RTS to ARW LLC for workers' compensation payroll during the policy period at issue. The hearing officer also noted an admission made by Rosetti, Prate's president, in a letter to Liberty Mutual where she stated that ARW LLC and RTS were one and the same company but that they would each complete the unfinished contracts of the other. The hearing officer found that this admission contradicted the assertion that only RTS provided employees, as it would be impracticable for a construction entity such as ARW LLC to complete projects for RTS without its own employees. Additionally, the hearing officer found that Prate had the opportunity to provide an alternative explanation for those payments from RTS to ARW LLC through its answers to Liberty Mutual's interrogatories but did not. The hearing officer found it "dubious" that no information could have been provided to Liberty Mutual in the answers to interrogatories to substantiate that ARW LLC had no employees. Thus, Hearing Officer Riley specifically found that ARW LLC had employees during the policy period at issue.

¶ 24        With respect to the third issue, Hearing Officer Riley noted that Prate and its subcontractors with employees were required to carry workers' compensation coverage under section 1(a)(3) of the Workers' Compensation Act (Act) (820 ILCS 305/1(a)(3) (West 2018)). That section provides that, if a subcontractor, such as ARW LLC, had employees but did not have the requisite workers' compensation coverage, then a contractor, such as Prate, that engaged the subcontractor to do work would be liable to pay compensation to the subcontractor's employees. *Id.* Further, section 4(a)(3) of the Act provides that the general contractor and any subcontractors who fall within the provisions of section 3 of the Act must insure the entire liability of all employees and the entire compensation liability of the insured. *Id.* § 4(a)(3).

¶ 25        Hearing Officer Riley found that, because Prate's policy must cover "the entire compensation liability of the insured" and because Prate would be liable to pay compensation to ARW LLC's employees if ARW LLC lacked it.s own coverage, Liberty Mutual would be required by law to assume that liability under the circumstances. It followed then that Prate was required both to secure workers' compensation coverage for itself as principal and to ensure that ARW LLC had coverage as a subcontractor. Based on the prior findings that ARW LLC had employees during the policy period but lacked its own coverage, Hearing Officer Riley found that Liberty Mutual was exposed under Prate's policy to workers' compensation liability from ARW LLC's employees.

¶ 26        With respect to the final issue, Hearing Officer Riley noted that the contract language in the policy stated that the premium included "payroll and other remuneration[4] paid," which

---

[4]Remuneration is payment for work or services. Cambridge English Online Dictionary, https://dictionary.cambridge.org/us/dictionary/english/remuneration (last visited Dec. 12, 2022) [https://perma.cc/K7MV-ADW8].

included "the insured's direct employees" and "all other persons engaged in work that could make [Liberty Mutual] liable." Under the Act, Hearing Officer Riley found that the ARW LLC employees could have made Liberty Mutual liable, so it was proper to assess some amount of premium for them. Prate disputed that its insurance coverage was also bound by Rule 2-H of the NCCI Basic Manual, which states that "the contractor must furnish satisfactory evidence that the subcontractor has workers['] compensation insurance in force." Nevertheless, Hearing Officer Riley noted that the binder of coverage initially issued to Prate stated that coverage was provided under the state's workers' compensation laws "in accordance with the Plan rules" and that coverage would be given "under the applicable Workers' Compensation Insurance Plan developed or administered by NCCI." As such, Hearing Officer Riley found that Prate "contractually consented to the laws of Illinois and specific rules of the NCCI" that allowed for the "determination of a premium based upon uninsured subcontractors with employees engaged in work for the policyholder."

¶ 27    According to the policy at issue's provision regarding premiums, Liberty Mutual could only assess a premium "determined by multiplying a rate times a premium basis," which included "payroll and all other remuneration paid or payable during the policy period for services of: 1) all your officers and employees engaged in work covered by th[e] policy; and 2) all other persons engaged in work that could make [Liberty Mutual] liable under Part One of th[e] policy." The policy further provided that if the insured did "not have payroll records for [those] persons, the contract price for their services and materials may be used as the premium basis." Accordingly, Hearing Officer Riley found that, under the terms of the policy,

Liberty Mutual could charge a premium based on the contract price for ARW LLC's services and materials for Prate during the policy period at issue, which would be reflected in Prate's payments to ARW LLC.

¶ 28    Despite Prate's argument that it would be improper to factor any payments to ARW LLC into Liberty Mutual's premium calculations, Hearing Officer Riley found that, given Prate's "apparent inability" to supply any payroll records for the ARW LLC employees or supply sufficient financial records from ARW LLC showing that there were no employees, there was no other basis for estimating the applicable payroll and other remuneration for the employees. Further, Hearing Officer Riley found that Liberty Mutual had no contractual or statutory right to audit ARW LLC directly to obtain those records based on prior DOI precedent and, as such, it was permitted to use the contract price for services and materials as the basis for the premium.

¶ 29    In her affidavit, Murphy averred that, during her audit of Prate, she found that the total payments made by Prate to ARW LLC were $300,673.46.[5] After excluding 10% for materials, a total of $270,606.20 was added to Prate's audited payroll exposure. In a letter sent to the NCCI by Liberty Mutual, Murphy stated that the additional premium was calculated according to Tables 1 and 2 of Rule 2-H of the Basic Manual. Rule 2-H provided for the additional premium to be calculated based on "not less than 90% of the subcontract price" for labor only. Hearing Officer Riley found that Liberty Mutual permissibly used an estimated payroll amount of $270,606.20, which was 90% of the total subcontract price between ARW LLC and Prate, as the basis for calculating the additional premium owed by Prate.

---

[5]This figure was based on Prate's profit and loss statement for the period between October 18, 2014, and June 28, 2015, that was sent to Liberty Mutual as part of its self-audit.

¶ 30     Hearing Officer Riley concluded, "based upon a preponderance of the evidence and upon consideration of the Record as a whole or such portion thereof as may be supported by competent material and substantial evidence," Liberty Mutual's calculation of the additional premium due to the policy at issue should be upheld. Therefore, Hearing Officer Riley recommended to the Director of the DOI that Liberty Mutual was entitled to the premium charges assessed to Prate regarding workers' compensation policy number WC5-34S-540426-024 and that the costs of the proceeding be waived.

¶ 31     On May 7, 2018, the Director of the DOI adopted the hearing officer's findings of fact, conclusions of law, and recommendations and ordered that Liberty Mutual was entitled to the disputed premium charges.

¶ 32                              B. Prate's Motion for Rehearing

¶ 33     Prate subsequently filed a motion for rehearing on May 15, 2018. The DOI found that Prate failed to demonstrate good cause or legally sufficient grounds to reopen the matter, Prate did not offer satisfactory explanations to counter the DOI's conclusion that ARW LLC possessed employees and was thus liable to Liberty Mutual for additional workers' compensation coverage, Prate offered no evidence that Liberty Mutual incorrectly calculated the additional premium, and Prate asserted conclusory statements on the weight of the evidence and application of law but did not provide evidence that would alter the analysis upon which the final order rested. However, the DOI stated that "it [was] not for the Department to determine the specific amount of the premium charge, but that the parties under the contract conduct themselves within the statutory and regulatory bounds of Illinois law." The DOI denied Prate's motion for rehearing on July 10, 2018.

¶ 34                              C. Circuit Court Proceedings

¶ 35    Prate then filed its complaint for administrative review and additionally sought a declaratory judgment concerning the correct amount of the additional premium owed to Liberty Mutual in the circuit court of Cook County on August 1, 2018.

¶ 36    The DOI filed a section 2-615 (735 ILCS 5/2-615 (West 2018)) motion to dismiss Hearing Officer Riley as an unnecessary party and to dismiss Prate's request for declaratory relief, arguing that its sole remedy was administrative review. Prate responded that it was entitled to declaratory relief since the DOI indicated that it was not its job to determine the specific amount of premium due. On December 12, 2018, the circuit court dismissed Hearing Officer Riley as a defendant and dismissed the declaratory judgment count of Prate's complaint as procedurally improper, both without prejudice. The court's order did not contain Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) language. The circuit court affirmed the Director's final order on August 14, 2019. This timely appeal followed.

¶ 37    Our previous disposition in this case was filed on March 5, 2021. Sometime thereafter, Liberty Mutual filed a petition for leave to appeal to our supreme court, which subsequently issued its opinion finding that DOI had the statutory authority under section 462 to resolve this dispute and accordingly reversing this court's order. As a result, this case was remanded for this court to consider the remaining issues raised in the initial appeal.

¶ 38                                          II. ANALYSIS

¶ 39    On appeal, Prate contends that (1) the DOI lacked authority to issue its final order, which is therefore void pursuant to this court's holding in *CAT Express, Inc.*, 2019 IL App (1st) 181851, (2) the DOI erred in finding that ARW LLC had its own employees who worked on Prate jobs to justify Liberty Mutual's charging an addition premium of $127,305, and (3) the

circuit court erred in dismissing its request for declaratory relief on an issue upon which the DOI had expressly declined and lacked authority to rule.

¶ 40                                     A. Jurisdiction

¶ 41        As a preliminary matter, we address the issue of jurisdiction, as raised by the DOI in its brief. The DOI contends that a potential jurisdiction question arises because the circuit court's dismissal, of Hearing Officer Riley as a defendant and the declaratory judgment count of Prate's complaint without prejudice, was not a final judgment. Additionally, the order entered on August 14, 2019, did not contain Rule 304(a) language. Further, the DOI asserts that the circuit court "seemed to intend the words 'without prejudice' to convey that it would entertain further argument while the administrative review action (count I) was pending, and not that it wished to preserve the claims (the count II declaratory action and the claims as against Riley) for refiling in the future."

¶ 42        While Liberty Mutual's brief does not contain any statement related to this court's jurisdiction to hear the appeal, Prate, on the other hand, contends that its appeal is from a final judgment under Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994). The appeal challenges both the circuit court's December 12, 2018, order, which dismissed its declaratory judgment count, and the final order of August 14, 2019, which affirmed the DOI's final order. Based thereon, Prate contends that this court has jurisdiction to hear its appeal.

¶ 43        We begin by noting that a reviewing court has a duty to *sua sponte* consider whether it has jurisdiction. *In re Estate of Young*, 2020 IL App (2d) 190392, ¶ 16. A challenge to our jurisdiction is a question of law. *JPMorgan Chase Bank, N.A. v. East-West Logistics, L.L.C.*, 2014 IL App (1st) 121111, ¶ 21. Questions of law are subject to *de novo* review. *Id.*

¶ 44        While Prate asserts that this court has jurisdiction based on entry of a final judgment in the circuit court, we find that such a conclusion is not immediately clear on the face of the record. In this case, the circuit court previously granted the DOI's section 2-615 (735 ILCS 5/2-615 (West 2018)) motion to dismiss both a defendant and count II of the complaint without prejudice. Thus, we must consider the effect of the circuit court's December 12, 2018, dismissal order on the jurisdiction of this court.

¶ 45        We note initially that the DOI filed a section 2-615 motion to dismiss Hearing Officer Riley as an unnecessary party and Prate's declaratory judgment count (count II) for lack of subject-matter jurisdiction. However, the DOI should have filed a section 2-619 (*id.* § 2-619) motion to dismiss. A section 2-615 motion allows for the dismissal of the complaint (or portion thereof) where the pleading is legally insufficient based on defects apparent on its face. *Id.* § 2-615. Conversely, a section 2-619 motion to dismiss admits the sufficiency of the complaint but asserts an affirmative matter to defeat the claim. *Id.* § 2-619.

¶ 46        In this case, there were affirmative matters raised by the DOI that defeated portions of plaintiff's claims. With respect to count I, the DOI sought dismissal of Hearing Officer Riley because he was not a necessary party to the administrative review action. With respect to count II, the DOI sought dismissal because the circuit court lacked subject-matter jurisdiction to review a claim for declaratory judgment in an administrative review case. These matters should have been raised in a section 2-619 motion and were improperly raised in a section 2-615 motion.

¶ 47        Ordinarily, the failure to properly designate a motion to dismiss would result in reversal if prejudicial to the nonmovant. *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 484 (1994). However, in this case, because we find that the parties were not prejudiced by the mislabeling

as will be further detailed below, in the interest of judicial economy, we will treat the improperly designated motion to dismiss as if it were properly designated when filed. *Talbert v. Home Savings of America, F.A.*, 265 Ill. App. 3d 376, 379 (1994).

¶ 48    Turning our attention to the jurisdiction question, the Illinois Constitution provides for appellate jurisdiction to hear appeals from all final judgments entered in the circuit court. Ill. Const. 1970, art. VI, § 6. The Constitution also grants our supreme court the authority to provide by rule for appeals from less than final judgments. *Id.* Absent an applicable supreme court rule, this court may not exercise appellate jurisdiction over a judgment, order, or decree that is not final. *Flores v. Dugan*, 91 Ill. 2d 108, 112 (1982). Illinois Supreme Court Rules 301 and 304 provide the jurisdictional basis for appealing final judgments. *Lewis v. Family Planning Management, Inc.*, 306 Ill. App. 3d 918, 921 (1999).

¶ 49    Generally, an order of dismissal entered "without prejudice" is a nonfinal order and is not appealable. *Ally Financial Inc. v. Pira*, 2017 IL App (2d) 170213, ¶ 28. However, motions to dismiss that were granted without prejudice become part of the final ruling on the case when no interlocutory appeal is taken or where the order contains no Rule 304(a) language. Thus, the circuit court's rulings on the DOI's motion to dismiss, even though granted without prejudice in the December 12, 2018, order, are final orders and are properly part of our jurisdiction over the final ruling in the case. See *Reed v. Retirement Board of the Fireman's Annuity & Benefit Fund of Chicago*, 376 Ill. App. 3d 259, 267 (2007) (once a final order has been entered in a case, all nonfinal orders previously entered may be reviewed by the appellate court).

¶ 50    Therefore, once the entire action terminated on August 14, 2019, Prate could file its notice of appeal for all orders entered by the circuit court. Accordingly, we find that we have

jurisdiction over this appeal pursuant to Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994) and turn to the merits of the appeal.

¶ 51                                    B. The DOI's Authority to Rule

¶ 52        As noted previously, Prate contends that the DOI lacked authority to issue its final order, which is therefore void pursuant to this court's holding in *CAT Express, Inc.*, 2019 IL App (1st) 181851. As also noted previously, we agreed with Prate's conclusion in our disposition in *Prate I*. However, on appeal by Liberty Mutual to our supreme court, our finding was reversed. Specifically, the supreme court found that the DOI's resolution of the dispute at issue fell within the scope of authority granted by section 462 of the Code providing for the review of the manner in which a rating system had been applied. *Prate Roofing*, 2022 IL 127140, ¶¶ 31-41. It then remanded the case to us to address the remaining issues raised on appeal. As this issue has been disposed of by the supreme court's ruling, we decline to further address Prate's arguments on this issue and turn our attention instead to its remaining arguments.

¶ 53              C. The DOI's Finding that ARW LLC Had Its Own Employees

¶ 54        Prate contends that the DOI erred in finding that ARW LLC had its own employees who worked on Prate jobs to justify Liberty Mutual charging an additional premium of $127,305. Specifically, it argues that the agency incorrectly "ignored or misinterpreted competent and uncontroverted evidence that ARW LLC had no employees and [that] all labor was subcontracted to RTS." Prate maintains that, under the plain language of the Act, if a subcontractor only operates as a middleman that turns around and subcontracts all labor to a different subcontractor who is properly insured for workers' compensation, there is no exposure to the hiring party or its insurer. Thus, the insured status of a middleman without employees is irrelevant. Prate further contends that the undisputed facts in this case are that it

hired an uninsured subcontractor, ARW LLC, and further that ARW LLC acted merely as a middleman who "turned around" and subsequently subcontracted all labor on Prate jobs to RTS, who was properly insured. Accordingly, the employees who actually worked on Prate jobs were protected under RTS's insurance policy. Prate also argues that it provided uncontradicted proof to the DOI that ARW LLC had no employees of its own in the form of affidavits from the owner and/or employee of the relevant subcontractors. This argument goes to the heart of the dispute and this appeal.

¶ 55    In an administrative review appeal, we review the decision of the agency, not the decision of the circuit court. *Moore v. State Department of Human Services*, 2017 IL App (4th) 160414, ¶ 12. In administrative review cases, reviewing courts may encounter questions of fact, questions of law, and mixed questions of law and fact. *Van Dyke v. White*, 2016 IL App (4th) 141109, ¶ 19. An administrative agency's findings and conclusions on questions of fact are deemed *prima facie* true and correct; a reviewing court does not weigh the evidence or substitute its judgment for that of the agency. *Id.* Instead, a reviewing court is limited to ascertaining whether such findings of fact are against the manifest weight of the evidence, meaning that the opposite conclusion is clearly evident. *Id.* In contrast, an agency's decision on a question of law is not binding on a reviewing court, and we review such decisions *de novo*. See *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 395 (2001). Mixed questions of fact and law are questions where the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts can satisfy the statutory standard: whether the rule of law as applied to the established facts is or is not violated. *Moore*, 2017 IL App (4th) 160414, ¶ 13. A decision on a mixed question of law and fact will not be reversed on appeal unless it is clearly erroneous, meaning that the reviewing

court is left with the definite and firm conviction that a mistake has been made. *Van Dyke*, 2016 IL App (4th) 141109, ¶ 19.

¶ 56 Here, the DOI's determination of whether ARW LLC had employees involves a question of fact because it required the DOI to make factual determinations based on the evidence presented by the parties. We therefore review the DOI's decision under the manifest weight of the evidence standard. See *id.* A judgment is against the manifest weight of the evidence only when an opposite conclusion is apparent or when findings appear to be unreasonable, arbitrary, or not based on evidence. *Battaglia v. 736 N. Clark Corp.*, 2015 IL App (1st) 142437, ¶ 23.

¶ 57 In considering an agency's factual findings, a reviewing court does not weigh the evidence or substitute its judgment for that of the agency. *Hopkins v. Board of Trustees of the Firefighters Pension Fund of East St. Louis*, 2016 IL App (5th) 160006, ¶ 38. However, the deference accorded an agency's decision is not without limitation. *Id.* A reviewing court may reject an agency's findings if such findings clearly contradict the manifest weight of the evidence. *Id.* Even when supported by some evidence that, if undisputed, would sustain the administrative finding, it is not sufficient if upon a consideration of all the evidence the finding is against the manifest weight. *Id.* If, after examining the entire record, we believe the manifest weight of the evidence favors the party who did not prevail, then it is our duty to reverse. *Id.*

¶ 58 That is precisely the situation presented here. As noted above, the DOI's decision was wholly based on documentary evidence, and there was no live testimony heard. Indeed, in reviewing the proffered documentary evidence, the DOI acknowledged that the affidavits presented by Prate averred that ARW LLC had no employees and, instead, the labor was supplied by RTS. Hearing Officer Riley also found that the assertion was echoed by both M. Prate and M. Gurdak in their respective affidavits. However, based on "other information

supplied during discovery," Hearing Officer Riley concluded that ARW LLC was considered a separate entity for the purposes of workers' compensation coverage and that ARW LLC likely had employees to carry out contracts on behalf of Prate and/or RTS. This finding was specifically based on Prate-supplied documents that listed RTS at the top and appeared to be proofs of payment by RTS to ARW LLC for workers' compensation payroll during the policy period at issue. Hearing Officer Riley found those documents to be a further indication that ARW LLC had its own employees for which RTS covered the cost of exposure. The hearing officer also noted an "admission" made by Prate's president, Cynthia Rosetti, when she sent a letter to Liberty Mutual stating that ARW LLC and RTS were one and the same company but that they would each complete the unfinished contracts of the other. Hearing Officer Riley found that this "admission" contradicted Prate's assertion that only RTS provided employees, as it would be "impracticable for a construction entity such as ARW LLC to complete projects for RTS without its own employees." Additionally, Hearing Officer Riley found that Prate had the opportunity to provide an alternative explanation for payments made from RTS to ARW LLC through its answers to Liberty Mutual's interrogatories but did not. The hearing officer found it "dubious" that no information could have been provided to Liberty Mutual in the answers to interrogatories to substantiate Prate's claim that ARW LLC had no employees. Thus, Hearing Officer Riley specifically found that ARW LLC had employees during the policy period at issue.

¶ 59     Considering the record before us as well as Prate's arguments on appeal, we find that the DOI's findings of fact regarding whether ARW LLC had employees was against the manifest weight of the evidence. The uncontradicted affidavits submitted by M. Prate and M. Gurdak indicated that ARW LLC had no employees. Liberty Mutual, however, submitted no evidence

to support its conclusion that ARW LLC in fact had employees that were subject to workers' compensation coverage. Rather, the hearing officer determined that Prate's position was contradicted by two pieces of evidence: the letter from Rosetti and the RTS documents that showed RTS payments for workers' compensation coverage. Hearing Officer Riley specifically found that

> "[a] telling admission was made by Ms. Cynthia Rosetti, president of Prate Roofing, when she sent a letter to Liberty Mutual that stated, 'ARW Roofing, LLC and Reliable Trade Services, LLC are one and the same company,' but also explained that ARW LLC and RTS would complete the unfinished contracts of the other. [Citation.] If ARW LLC and RTS would complete the contracts for one another, this contradicts the assertion that only RTS provided employees, as it would be impracticable for a construction entity such as ARW LLC to complete projects for RTS without employees of its own."

¶ 60    However, none of this evidence contradicts the clear evidence presented by Prate. Additionally, Rosetti's letter that the DOI relied on as dispositive of the issue and contradictory to the affidavits Prate submitted was itself contradicted by a second letter from Rosetti. The second letter clarified that she erroneously used both LLC and Inc. with respect to ARW LLC "not realizing that [she] was doing that." ARW *Inc.* became RTS, so it was those two companies that were "one and the same company." Nor did Rosetti say that ARW LLC and RTS would complete the contracts of each other; rather, in the January 14, 2016, letter she explained that ARW LLC remained the company on the contract with Prate:

> "The name change did not happen overnight. Many of our contracts covered extended periods of time. If our contract started with ARW Roofing, LLC, then we finished with

ARW Roofing, LLC. When all of the contracts that were started with ARW Roofing, LLC were completed, we then contracted with [RTS].

¶ 61 Contrary to Hearing Officer Riley's characterization of Rosetti's letter, Rosetti did not say that ARW LLC and RTS finished one another's contracts but only that, if Prate had a contract with ARW LLC, it finished that contract with ARW LLC using the employees of RTS. Rosetti emphasized again in that letter that RTS "was the labor and carried the workers compensation." Thus, this letter provided no support for the hearing officer's conclusion that ARW LLC had employees.

¶ 62 Hearing Officer Riley also relied "[m]ost substantially" on RTS documents that were attached to M. Prate's second affidavit, which was submitted with Prate's reply in support of its trial brief. Hearing Officer Riley concluded that these documents "appear[ed] to be proofs of payment by RTS to ARW LLC for workers' compensation payroll during the policy period at issue" and that "[p]ayments for workers compensation payroll ostensibly indicate[ed] that ARW LLC had its own employees for which RTS covered the cost of exposure." M. Prate explained what those documents were in his affidavit, saying they were part of the "documents provided by [RTS] showing that it performed all labor and the cost of such labor." Looking at the documents themselves, that is exactly what they appear to be—an accounting by RTS of what it had paid in workers' compensation for its own employees that worked on an ARW LLC job. We find such documents do not rise to the level of conclusive evidence that ARW LLC had employees.

¶ 63 Additionally, Hearing Officer Riley apparently completely discounted Low's statement that ARW LLC did not have employees because he concluded that it was "not clear how [Low] would have reliable knowledge about that entity's staffing." Yet Rosetti explained to Liberty

Mutual's auditor in a letter attached to Liberty Mutual's position paper that ARW LLC and RTS, also known as ARW Inc., both used the same insurance agent. Low was therefore very much in a position to know whether ARW LLC had employees, as he provided insurance for all of the companies involved and understood the relationship between them.

¶ 64      Hearing Officer Riley also expressed concern that Prate could have "provided an alternative explanation for these payments through interrogatories served by Liberty Mutual," but the two interrogatories cited did not ask for such an explanation but rather were broad requests for payroll details and payments from RTS and ARW LLC. We thus find that this was also not conclusive and dispositive evidence that ARW LLC had employees.

¶ 65      In short, the evidence relied on by Hearing Officer Riley to conclude that ARW LLC had employees who were subject to workers' compensation coverage did not support such a finding. Such a finding ignored the uncontradicted evidence provided by Prate to the contrary. After viewing the documentary evidence presented as a whole, we conclude that the DOI's decision was against the manifest weight of the evidence. Accordingly, we reverse the factual finding of the DOI that ARW LLC had its own employees for purposes of requiring workers' compensation coverage, as it was against the manifest weight of the evidence.

¶ 66                  D. Prate's Request for Declaratory Relief

¶ 67      The final issue before us is whether the circuit court erred in dismissing Prate's request for declaratory relief when the DOI expressly stated that it "was not its job to determine the correctness of the premium" assessed to Prate by Liberty Mutual. Prate contends that its request satisfied the elements of an action for declaratory judgment: Prate has a tangible interest, Liberty Mutual has an adverse interest, and an actual controversy exists.

¶ 68    Our determination that the DOI's conclusion that ARW LLC had employees was against the manifest weight of the evidence renders this issue moot, and no further relief is necessary.

¶ 69                                    CONCLUSION

¶ 70    For the foregoing reasons, we reverse the final order of the DOI in favor of Liberty Mutual. Accordingly, we reverse the circuit court of Cook County's order affirming the DOI.

¶ 71    Circuit court judgment reversed.

¶ 72    Department order reversed.

---

***Prate Roofing & Installations, LLC v. Liberty Mutual Insurance Corp.,***
**2022 IL App (1st) 191842-B**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 18-CH-9826; the Hon. Caroline Kate Moreland, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Kevin J. Kuhn, of Kuhn Firm P.C., of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | James T. Barnes and John C. Schmadeke, of Barnes, P.C., of Chicago, for appellee Liberty Mutual Insurance Corporation. |
| | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Mary C. LaBrec, Assistant Attorney General, of counsel), for other appellees. |

---